AO 106 (Rev. 04/10) Application for a Search Warrant

FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH

JUL - 5 2017

D. MARK JONES, CLERK
BY _____
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
District of Utah

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Contents of Email address patrickryanward6969@gmail.com with associated Google products to the account

Case No. 2:17-mj-346-RTB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Central____ District of ____Utah____, there is now concealed *(identify the person or describe the property to be seized)*:

Records, electronic storage devices/media storage devices, cameras, motion picture films, video cassettes, digital recordings, and/or evidence of digital recordings that may contain or have been used to produce, store and/or distribute child pornograhpy.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2)(A) | Activities relating to material involving child pornography |
| 18 U.S.C. § 2252A(b)(1) | Sexual exploitation of Children |
| 18 U.S.C. § 2251(a) | Production of Child Pornography |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Shaun E. Helt, Special Agent, HSI/ICE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-5-17

City and state: St. George, UT

_____
*Judge's signature*

Robert T. Braithwaite, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH EMAIL ADDRESS PATRICKRYANWARD6969@GMAIL.COM AND GOOGLE PRODUCTS ASSOCIATED WITH THE EMAIL ACCOUNT TO INCLUDE BUT NOT BE LIMITED TO: GOOGLE ANDROID DEVICE CONSOLES, GOOGLE CALENDAR, GOOGLE CHROME SYNC, GOOGLE CLOUD, GOOGLE DRIVE, GOOGLE HANGOUTS, GOOGLE PHOTOS, GOOGLE VOICE, GOOGLE +, GOOGLE PROFILE, AND WEB HISTORY THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Shaun E. Helt, being duly sworn, depose and state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I am a Special Agent of the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and have been so employed since March 2003. I am currently assigned to the St. George Resident Office, St. George, Utah. I am a graduate of the Federal Law Enforcement Training Center and the United States Bureau of Immigration and Customs Enforcement Academy Criminal Investigations Training Course. Prior to joining HSI, I was an agent with the United States Border Patrol for eight years and have been employed as an agent with the United States government for over 22 years. My current duties include investigating violations in financial, fraud, narcotic and controlled substances, counter-proliferation, intellectual property rights, firearms, child exploitation, immigration law and the

illegal movement of individuals, products, and contraband traveling through the borders of the United States.

2. As a Special Agent with HSI, I have conducted multiple narcotic investigations involving smuggling, manufacturing, distribution and money laundering.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2251(a), and 2252A(a)(2)(A), have been committed. There is also probable cause to search the information described in Attachment "A" for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment "B".

## OVERVIEW

4. Your affiant will set forth specific facts and circumstances necessary to establish probable cause to believe that evidence, fruits and instrumentalities are present in the associated email account and associated Google products listed above in violation of Title 18, United States Code, Section 2251(a), and 2252A(a)(2)(A) (production, and possession of child pornography).

5. Your affiant believes that the facts set forth in this affidavit demonstrate probable cause to believe that evidence of the commission of the aforesaid criminal offenses exists within the Google email account and the associated Google products to the email account of Patrick Ryan Ward, which are described as:

a) patrickryanward6969@gmail.com

b) Associated Google products to include but not be limited to Google Android Device Consoles, Google email (Gmail), Google Calendar, Google Chrome Sync, Google Cloud, Google Drive, Google Hangouts, Google+, Google Photos, Google Contacts, Google Voice and Google Profile.

2

5. This email account and associated products are stored at the premises owned, maintained, controlled, or operated by Google, Inc., an email, remote storage and software provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043. The information and accounts to be searched are more fully described in the following paragraphs and in Attachment "A".

6. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the account referenced in this affidavit and further in Attachment "A", including the contents of the communications.

7. This affidavit does not provide all of the information known to your affiant, but your affiant submits that it does provide sufficient information to support probable cause.

## PROBABLE CAUSE

8. On April 29, 2017, a woman reported to the Cedar City Police Department that her former live-in-boyfriend, Patrick Ryan WARD, was video recording his eleven (11) year step daughter while she showered. The eleven year old girl will be referred to as victim "A" throughout the remainder of this affidavit.

9. The mother of victim "A" reported that Patrick Ryan WARD was her former live-in-boyfriend for the past five (5) to six (6) years and that WARD is the only father victim "A" has known. The mother of victim "A" reported that WARD is now her ex-boyfriend and that he no longer lives with her and her daughters. Since they lived together for several years, her

daughters know WARD as their father. Therefore, the mother of victim "A" allows her daughters to spend every other weekend at WARD's house.

10. The mother of victim "A" reported to the police that her twelve (12) year old daughter, victim "A", had recently told her that WARD had been video recording victim "A" with his smart phone at WARD's house while she showered during her visits. The mother of victim "A" said her daughter just recently turned twelve (12) years old and that her daughter was eleven (11) years old at the time of the recorded incidents.

11. The mother of victim "A" said her daughter approached her after victim "A" returned home from WARD's house and told her mother that while she was taking a shower at WARD's house, she heard a phone make a noise that sounded like a message notification or a phone ring. Victim "A" said she looked for the noise and found a phone in the bathroom. Victim "A" recognized the phone as Patrick WARD's smart phone. Victim "A" accessed the phone and found two (2) videos of her while she was taking a shower. Victim "A" said when she got up the next morning, she got dressed and went to her mother's house and told her mother what had occurred.

12. Victim "A" told her mother that when she stayed at WARD's house, WARD insisted that she take a shower when she was at his house and that she used a specific bathroom in the house.

13. Victim "A" said WARD went into the bathroom prior to her going into shower and then WARD would go into the bathroom again as soon as she got out of the shower.

14. On May 2, 2017, a forensic interview was conducted with victim "A" at the Children's Justice Center in Cedar City, Utah. During the interview, victim "A" explained in more detail about what had occurred at WARD's house when she visited. Victim "A' described

4

WARD's home as a Duplex with three stories, a basement, a main floor, and an upstairs. Victim "A" said each floor has a bathroom and that there are seven (7) bedrooms and three (3) bathrooms in the residence.

15. Victim "A" said when she visited WARD's home, he was very demanding and specific about telling her she had to shower when she was at his home and always told her to use the upstairs bathroom. Victim "A" said WARD used the bathroom directly before and directly after she showered.

16. Victim "A" said WARD only used the upstairs bathroom and said things like " it's the only one with toilet paper". However, victim "A" had seen toilet paper in the other bathrooms.

17. Victim "A" said that about 10 minutes after she got into the shower, WARD would tell her she had to get out because he had to use the bathroom. Victim "A" said it sounded strange because WARD had just used the bathroom before she went into shower. Victim "A" said the same scenario occurred each time she visited WARD's home.

18. Victim "A" said on some occasions, she told WARD she did not need a shower. She said WARD became very insistent and told her she could not sleep in the beds at his house unless she showered first.

19. Victim "A" said that the last time she was staying at WARD's house, Victim "A" pointed out to WARD that her sisters were not told to shower like she was and that when they did not want to shower, her sisters did not get into trouble and WARD did not make it into a big deal like he did with victim "A".

20. Victim "A" said the last time she visited WARD's home, she had gotten undressed in the bathroom to take a shower. Victim "A" said after she had been in the shower for

5

a few minutes, she heard a noise that sounded like a message alert or a phone ring. Victim "A" said she got out of the shower to look for what was making the noise. Victim "A" said she found a phone hidden in an old VCR Movie Case. Victim "A" said the movie case was set up to hide the cell phone camera so that WARD could record her getting into the shower.

21. Victim "A" said the movie case had a picture of some fairies on the front cover and looked like a kid's movie. Victim "A" said the movie case had a hole drilled into it so the camera could record through the hole. The movie case also had other small boxes glued inside it to hold the cell phone in the right place in order for the camera lens to record through the hole. Victim "A" said there were small toys and other items set up around the video case, which made it difficult to see the cell phone camera in the video case.

22. Victim "A" said she had used WARD's phone in the past and recognized the phone as Patrick WARD's phone. Victim "A" described the phone as a black LG phone with a cracked screen. Victim "A" said she saw the picture of his girlfriend as the screen saver on the phone. Victim "A" said she knew the passcode to his phone was a "W" pattern and that she was able to unlock the phone.

23. After victim "A" unlocked the phone, she found a video of her as she was getting into the shower naked. Victim "A" said she was very upset and deleted the video from WARD's phone. Victim "A: said she continued to look through WARD's phone and found a second video from a previous visit at WARD's house. Victim "A" said she did not play the video but could see from the still picture on the video that it was a video recording of her getting into the shower naked. Victim "A" said she deleted the second video as well.

6

24. Victim "A" said that after the phone started to play music, Patrick told her to get out of the shower and was very anxious to get into the bathroom again after she got out. Victim "A" said she thinks he was worried because he heard the phone go off as well.

25. On May 3, 2017, a search warrant was executed at WARD's home at 885 South 110 West, Cedar City, Utah. During the execution of the search warrant, investigators encountered Patrick Ryan WARD at the residence. WARD was in possession of a black LG cellular phone with a cracked screen. WARD told the investigators conducting the search warrant that he was the owner of the phone. Investigators collected the phone from WARD in order to preserve the phone for evidence. During the execution of the search warrant, investigators observed that the upstairs bathroom matched the description given by victim "A".

26. During a post Miranda interview, WARD gave consent to investigators to search the contents of his cellular phone. During an initial search of WARD's phone, investigators observed four (4) videos that depicted victim "A" undressing in the bathroom and entering into the shower naked. The videos depict WARD setting up the camera in the bathroom in different positions and adjusting the camera in order for it to be angled toward the shower. Victim "A" then enters the bathroom where she is being recorded while she undresses and enters the shower. All four (4) of the videos were found in WARD's Google photos account that is linked to his smart phone.

27 Investigators confronted WARD with the information that was found in his phone. WARD stated "there is no denying it anyway" and admitted to setting up the camera in the bathroom to record his stepdaughter while she was naked in the bathroom. WARD said when he initially recorded victim "A", he set up the phone in the bathroom without disguising it. WARD said he later placed the phone in a white video case in order to hide the phone from view.

WARD said he was "dumb and drunk" at the time he recorded victim "A" and that WARD recorded victim "A" because he was "curious".

28.     During the post Miranda interview, WARD gave consent to investigators to search his Google email account (Gmail) patrickryanward6969@gmail.com and provided the password to his Google email account. Your affiant accessed and viewed WARD's email account and located four (4) videos in the Google Photos account. All four of the videos depicted victim "A" undressing in the bathroom and getting into the shower naked.

29.     On May 4, 2017, a preservation letter, issued pursuant to Title 18, United States Code, Section 2703(f), was sent to Google, Inc. requesting that Google, Inc. preserve information in its possession relating to the **TARGET EMAIL ADDRESS**.

30.     On May 19, 2017, a summons was sent to Google Inc. requesting the subscriber information for email account patrickryanward6969@gmail.com. On June 12, 2017, Google Inc. advised that the email address was registered to Patrick Ward, with an associated phone number of (435) 559-2476. The associated phone number is also registered to Patrick WARD.

## BACKGROUND CONCERNING GOOGLE EMAIL

31.     In general, an email that is sent to a GOOGLE subscriber is stored in the subscriber's "mail box" on GOOGLE's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on GOOGLE's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on GOOGLE's servers for a certain period of time. The same applies for instant messages and other GOOGLE products, which are sent and received using the same GOOGLE identifier. Therefore, the computers of GOOGLE are likely to contain stored electronic communications (including email and instant messages, photographs, voice messages and cloud storage for GOOGLE

8

subscribers). In my training and experience, such information may constitute evidence of the crimes under investigation because the communications may relate directly to such crimes and because the information can be used to identify the account's user or users.

32. In my training and experience, I have learned that GOOGLE provides a variety of on-line services, including email access and instant messenger services. These services include but are not limited to Google Hangout, Google photos, Google Voice, Google+ and Google Chrome, all available to the public. GOOGLE allows subscribers to obtain email/instant messenger accounts at the domain name Google.com, like the email/instant messenger account listed in Attachment "A".

33. A GOOGLE subscriber can also store with the provider files in addition to emails/instant messenger, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by GOOGLE. In my training and experience, evidence of who was using an email account/instant messenger account may be found in address books, contact or buddy lists, emails, instant messengers, and attachments to emails, including pictures and files.

34. Email/instant messenger providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

35. Email/instant messenger providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email/instant messenger providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

36. In some cases, email account/instant messenger users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email/instant messenger providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## CHILD PORNOGRAPHY OFFENDER CHARACTERISTICS

37. Over the course of my law enforcement career, I have been informed of the studies of child sex offenders in general, and child pornography offenders in particular. I also have learned about the activities and characteristics of child pornography offenders from other

10

law enforcement agents who focus on online child sexual exploitation, including those who investigate the offenses and those who analyze the computer equipment of the offenders.

38. Based on my own experience and what I have learned from other individuals who specialize in the investigation and study of child pornography offenders, I know that the following traits and characteristics are generally found to exist and be true in cases involving individuals who collect child pornography:

> a. They have a sexual attraction to children and receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

> b. They collect and possess sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital images for their own sexual gratification. They also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

> c. They often seek out like-minded individuals, either in person or on the internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, peer-to-peer

communications, email, email groups, bulletin boards, internet relay chat, newsgroups, instant messaging, and other similar vehicles.

d. They maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e. They often collect, read, copy or maintain names, addresses (including email addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f. They rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.

39. Based on my own experience investigating computer-facilitated child sexual exploitation crimes, and the experiences of other law enforcement agents with who I have consulted, I believe that the majority of individuals who collect child pornography via the

internet maintain their collections, increasingly in both online and offline storage media, even as they relocate from one residential or work address to another.

40. This affidavit has been reviewed by Assistant United States Attorney Matthew Bell.

## CONCLUSION

41. Based on the forgoing, your affiant requests that the Court issue the proposed search warrant. Because the warrant will be served on Google Inc., who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

42. Your affiant further requests that the Court order that this application be sealed until further order of the Court. This affidavit discusses an ongoing criminal investigation that involves child pornography. Accordingly, there is good cause to seal the affidavit because its disclosure may jeopardize that investigation.

Respectfully submitted,

Shaun E. Helt

Subscribed and sworn to before me this 5th day of July, 2017.

Honorable Robert T. Braithwaite
United States Magistrate Judge

13

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with patrickryanward6969@gmail.com along with Google products associated with accounts to include but not be limited to Google Android Device Consoles, Google Calendar, Google Chrome Sync, Google Cloud, Google Drive, Google Hangouts, Google+, Google photos, Google Contacts, Google Voice, and Google Profile that are stored at premises controlled by Google Inc., a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

## ATTACHMENT B

### Particular Things to be seized

### I. Information to be disclosed by GOOGLE, Inc. (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any e-mails, instant messages, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f). The Provider is required to disclose the following information, from July 7, 2014 to May 4, 2017, to the government for each account or identifier listed in Attachment A:

a. The contents of all emails associated with the accounts, including stored or preserved copies of emails sent to and from the accounts, draft emails, the source and destination addresses associated with each e-mail, the date and time at which each email was sent, and the size and length of each email;

b. The contents of all instant messages associated with the accounts, including stored or preserved copies of messages sent to and from the accounts, the source and destination addresses associated with each instant messenger session, and the date and time at which each instant message was sent.

c. The contents of all Google Android Device Consoles, Google Calendar, Google Chrome Sync, Google Cloud, Google Drive, Google Hangouts, Google+, Google photos, Google Voice, Google Contacts and Google Profile associated with the accounts.

d. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP

address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

  e.  The types of service utilized;

  f.  All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

  g.  All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2251(a), 2252A(2)(A), involving Patrick Ryan WARD and occurring on and after July 7, 2014, including, for the account or identifier listed in Attachment "A", information pertaining to the following matters:

  a.  Records related to manufacturing, receipt or distribution of child pornography

  b.  Information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by GOOGLE, Inc. and my official title is _____. I am a custodian of records for GOOGLE, Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of GOOGLE, Inc. and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of GOOGLE, Inc. and

c. such records were made by GOOGLE, Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____     _____
Date                                Signature